## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION


KENNETH DARITY,

      Petitioner,

vs.                                  Case No. 8: 03-CV-1829-T-30MAP

JAMES McDONOUGH,[1]

      Respondent.
_____/

## O R D E R

Before the Court is a petition for writ of habeas corpus filed *pro se* by a Florida prisoner pursuant to 28 U.S.C. § 2254 challenging state convictions and sentences entered in the Sixth Judicial Circuit Court, Pinellas County, Florida.   Respondent has filed a response to the petition (Dkt. 8), and Petitioner has filed a reply thereto (Dkt. 13). The matter is now before the Court for consideration on the merits.  It is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).

### Background

Petitioner was charged by Information on October 16, 1997, with three counts of sexual battery (Dkt. 6, Ex. 20, Vol. I at R. 3-4).  A Notice of Enhanced Penalty was filed on January 22, 1998.  Represented by court-appointed counsel, Petitioner proceeded to a trial by jury on June 30, 1998, and was found guilty as charged on Counts I and III, and not

---

[1]James McDonough, Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

guilty on Count II, on July 2, 1998 (Dkt. 6, Ex. 20, Vol. I at R. 64-68).  Petitioner qualified

for sentencing as an habitual felony offender and a prisoner releasee reoffender (Dkt. 6,

Ex. 20, Vol. II at Tr. 5-6).  On October 21, 1998, the trial court sentenced Petitioner to serve

a term of 30 years as an habitual felony offender on each count, with the sentences to run

concurrently (Dkt. 6, Ex. 20, Vol. I at R. 64-70).  On direct appeal, Petitioner raised the

following issues:

1. The trial court erred in allowing the State to strike prospective juror Mr. Wilson Kennedy, who was an African American man, since the State failed to articulate a race neutral basis for the strike;

2. The trial court erred in reading [the] State's proposed jury instruction number one to the jury;

3. The trial court erred in allowing hearsay statements from the State witnesses regarding the alleged assault; and

4. The trial court erred in denying the [Petitioner] a mistrial based on improper closing argument by the prosecutor.

Dkt. 6, Ex. 1.  On April 14, 2000, the state appellate court affirmed Petitioner's convictions

and sentences per curiam, without unwritten opinion (Dkt. 6, Ex. 4).  *See Darity v. State*,

758 So.2d 676 (Fla. 2d DCA 2000) (table decision).  The mandate issued on May 22, 2000

(Dkt. 6, Ex. 5).

On January 29, 2001, Petitioner filed a motion for post-conviction relief pursuant to

Fla. R. Crim. P. 3.850, asserting that trial counsel was ineffective in failing to:

1. Move for a proper judgment of acquittal at the close of all evidence after properly introducing evidence negating [Petitioner's] alleged guilt;

2. Call Ron Bell to testify before the jury after hearing his testimony without the jury being present;

3. Properly setting forth his argument for a judgment of acquittal at the end of the State resting its case;

4. Impeach State's witness Janette Saurbier[ ] even after her hearsay testimony was allowed by the court over objection;

5. Properly impeach State's witness David Huff and denying [Petitioner] his right to have all evidence and testimony to be heard by the jury;

6. Impeach the alleged victim with her inconsistent statements;

7. Impeach Detective Schmidt regarding her willful false testimony;

8. Impeach the victim with her lies about her boyfriend selling all her furniture when in fact this is not true;

9. Object to the chain of custody of the DNA evidence presented without proper identification; and

10. Demonstrate the actual innocence of the [Petitioner], that it was impossible for the alleged crime to have occurred at the time the victim stated unless the [Petitioner] was not the perpetrator; and

11. Petitioner's constitutional rights were violated by prosecutorial misconduct.

Dkt. 6, Ex. 005. Petitioner moved to amend his Rule 3.850 motion on February 22, 2002, and again on May 28, 2002 (Dkt. 8, Exs. 7 and 8). On June 18, 2002, the trial court entered a written order denying eight of the claims raised in Petitioner's Rule 3.850 motion, dismissing the amended motions without prejudice for lack of the required oath,[2] and directing the State to file a response to the three remaining grounds (Dkt. 6, Ex. 9):

> Overall, Defendant raises the claim of ineffective assistance of counsel. To successfully argue a claim of ineffective assistance of counsel, Defendant must prove that counsel's performance was deficient and that deficiency caused Defendant to suffer prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy the prejudice test, Defendant must show that a reasonable probability exists that the outcome would have been different absent the ineffective assistance. *See id.; See Haliburton v. Singletary*, 691 So.2d 466 (Fla. 1997).

---

[2]The Florida rules of criminal procedure require that a defendant seeking relief under Rule 3.850 file his motion under oath, *see* Fla. R. Crim. P. 3.850(c); 3.987. It does not appear from the record that Petitioner refiled the proposed amendments to his Rule 3.850 motion.

Ground One

Defendant contends that counsel was ineffective for "not moving for a proper judgment of acquittal at the close of all evidence after properly introducing evidence negating defendant's alleged guilt." Defendant argues that counsel should have moved for a judgment of acquittal at the close of all evidence "after introducing evidence not apparent from the record."

The record reveals that at the close [of] the State's case counsel argued an extensive motion for judgment of acquittal. [*See Exhibit 2; Trial Transcript, pgs. 426-438.*] Likewise, at the close of the evidence, counsel renewed that argument and the Court again denied the motion. [*See Exhibit 3: Trial Transcript, pgs. 534-5.*] Since counsel had previously advanced an argument before the Court, it would be unnecessary, and mundane, to repeat that identical argument. The Court finds the record conclusively refutes Defendant's allegations and this claim is denied.

Ground Two

Next, Defendant claims that counsel was ineffective by failing to call Ron Bell as a witness.  The record reveals that Mr. Bell's testimony was proffered during the motion in limine hearing and the attorneys presented their respective arguments. [*See Exhibit 4: Trial Transcript, pgs. 7-28, 127-161.*] During the trial, the Court allows testimony to be introduced on this point. [*See Exhibit 5: pgs. 286-7.*] The record reveals that Mr. Bell was not called as a witness. Therefore, the State is instructed to respond to this claim.

Ground Three

Defendant alleges that counsel was ineffective for "not properly setting forth his argument for a judgment of acquittal at the end of the State resting their case." As discussed in ground one, the record reflects that counsel did argue a thorough judgment of acquittal motion at the end of the State's case. [*See Exhibit 2 and 3.*] Defendant argues that counsel improperly argued the wrong counts and that mistake forced the Court to deny the motion. Upon review of the record, it is clear the Court understood the motions and the counts to which counsel argued. The Court rendered its decision based upon the law as applied to the facts of the case and did not consider any misstatement by counsel. The record refutes Defendant's allegation and it is denied.

Ground Four

Defendant contends that counsel was ineffective for failing to impeach witness, Janette Saurbier. However, the record reflects that counsel did

conduct a cross-examination of this witness, including questioning her on the time she arrived at the apartment and other inconsistencies in her statements. [*See Exhibit 6: Trial Transcript, pgs. 322-33.*] The Court finds the record conclusively refutes Defendant's allegation and it is denied.

<u>Ground Five</u>

Defendant alleges that counsel's performance was deficient for failing to "properly impeach State's witness David Huff." Specifically, Defendant contends counsel erred by striking Mr. Huff's testimony regarding the substance of their argument.

In context, the State had inquired into the argument between Defendant and Mr. Huff. When Defendant replied that he and Mr. Huff "were arguing over crack cocaine," counsel sought to strike that response. [*See Exhibit 7: Trial Transcript, pg. 342-344.*] Defendant contends this stricken response would have supported Defendant's case. The State is instructed to respond to this allegation.

<u>*Ground Six*</u>

Defendant contends that counsel was ineffective for "failing to impeach the alleged victim with her inconsistent statements." The record reflects counsel did conduct a cross-examination of the witness. [*See Exhibit 8: Trial Transcript, pg. 272-288.*] However, it does not appear that trial counsel utilized the witness's deposition statements as grounds for impeachment. Therefore, the State is instructed to respond to this claim.

<u>Ground Seven</u>

Defendant claims that counsel was ineffective for failing to impeach Detective Schmidt's "willful false testimony." Defendant argues Detective Schmidt falsely testified that she was unable to locate Defendant and that counsel never addressed that Defendant resided at his mother's address and that he could be located at that address. The record demonstrates the detective did testify that she was unsuccessful at locating Defendant. [*See Exhibit 9: Trial Transcript, pg. 362-3.*] However, the record also demonstrates that counsel did question Detective Schmidt on the fact that Defendant resided with his mother and he was located by police at that address. *[See Exhibit 10: Trial Transcript, pgs. 365-7.*] Furthermore, Defendant states Mrs. Darity testified the police only visited her house on one occasion and that was to arrest the Defendant. However, the record does not support this contention. [*See Exhibit 11; Trial Transcript, pg. 452-63.*] The Court finds the record refutes Defendant's allegation and this claim is denied.

Ground Eight

Defendant states that counsel was ineffective for failing to impeach the victim regarding her testimony that her boyfriend sold all her furniture. According to Defendant, there was furniture in the victim's apartment and, thus, her testimony regarding the selling of her furniture was false.

First, Defendant [sic] testified her boyfriend "had been out selling my furniture and just about everything else we owned." [*See Exhibit 12: Trial Transcript, pg. 240-1.*] During her deposition, the victim testified that her boyfriend was attempting to sell her coffee table and kitchen table. [*See Exhibit 13: Deposition, pg. 21.*] The victim never testified that he was successful in his endeavors to dispose of her furniture.

Although it is true that counsel did not question the victim regarding her furniture, defendant has not shown how counsel's failure to elicit testimony on this subject resulted in prejudice. There is no reasonable probability the trial's outcome would have been different if the victim had testified regarding her furniture. The Court finds this claim to be without merit and it is denied.

Ground Nine

Next, Defendant contends counsel was ineffective for failing to object to the DNA's chain of custody. The record demonstrates that defense and the State stipulated to forego a portion of the chain of custody testimony and just present one witness to introduce the evidence. [*See Exhibit 14: Trial Transcript, pg. 215.*] The record conclusively refutes Defendant's allegation and it is denied.

Ground Ten

Defendant contends that based upon the witnesses' testimony regarding the time of the offense, he could not have committed the offense, and counsel's performance was deficient for failing to present this evidence. Defendant argues the victim and Ms. Saurbier testified that Ms. Saurbier arrived at the residence between 10:00-11:30 p.m. But, the victim also testified the offense occurred around 11:59 p.m. He further states if this testimony is true, then he could not have committed the offense.

The record evidences that Ms. Saurbier testified she arrived between 12:30 a.m. and 1 a.m. [*See Exhibit 6: pg. 325.*] The victim was unsure what time Ms. Saurbier arrived. [*See Exhibit 8: pg. 281.*] The Court finds the record refutes these allegations.

Additionally, Defendant testifies that Mr. Oviatt testified regarding hearing what appeared to be an argument and that Mrs. Darity testified the Defendant was home the night of the offense. Defendant fails to present any cognizable issue in regard to these statements. The Court finds these allegations are conclusory in nature and do not set forth any specific claim for the Court's consideration. Accordingly, this claim is denied.

Grounds Eleven, Twelve, and Thirteen

Defendant alleges the prosecutor made improper comments during closing argument and denied his right to a fair trial. In support of his contention, Defendant argues the State improperly commented on the victim's emotional state, made personal attacks on the defense, commented on facts not in evidence, testified as an expert witness, and made incorrect statement[s] regarding the DNA evidence. First, the Court must examine these statements in the context of the closing argument. *See Garcia v. State*, 644 So.2d 59, 62 (Fla. 1994). Also, the Court must consider whether these statements merit a new trial by specifically evaluating whether the remarks have deprived Defendant of a fair trial, materially contributed to the conviction, or are so inflammatory that the statements influenced the jury to reach a more severe verdict that it would have otherwise. *See Brown v. State*, 754 So.2d 188 (Fla. 5th DCA 2000). The Court finds the statements do not present egregious conduct that denied Defendant of a fair trial nor did the remarks materially contribute to the conviction or inflame the jury to reach a more severe verdict. [*See Exhibit 15: Trial Transcript, pgs. 541-554, 579-591.*] The Court finds that Defendant has not shown prejudice and, as such, counsel was not ineffective for failing to object. *See Rhue v. State*, 603 So.2d 613, 615 (Fla. 2d DCA 1992). Based on the foregoing reasons, this claim is without merit and is denied.

Dkt. 6, Ex. 9 at 2-7. Having the benefit of the State's response to the remaining three allegations raised in Petitioner's Rule 3.850 motion, the trial court summarily denied the remaining claims on August 12, 2002, finding as follows:

Ground Two

Defendant claims that counsel was ineffective by failing to call Ron Bell, Chief Toxicologist for Pinellas/Pasco County, as a witness to impeach the victim's testimony regarding her cocaine usage. The record reveals that Mr. Bell's testimony was proffered during the motion in limine hearing and the attorneys presented their respective arguments. [*See Exhibit 4: Trial Transcript, pgs. 7-28, 127-161.*] During the trial, the Court allowed testimony to be introduced on this point. [*See Exhibit 5: pgs. 286-7.*] The record reveals that Mr. Bell was not called as a witness.

The State argues Mr. Bell would not have been able to impeach Defendant's testimony since it takes approximately 72 hours for the body to dispose of cocaine and this would not have proven the victim did use cocaine on the day of the offense.

The Court finds that Mr. Bell could not offer testimony regarding exactly when the victim would have used cocaine. [*See State's Exhibit 2.*] As such, he would not have been able to conclusively impeach the victim's testimony. The Court finds that Defendant has not proven that counsel's performance was deficient or that if this testimony was presented the trial's outcome would have been different. Based on the foregoing reasons, the motion is denied.

<u>Ground Five</u>

Defendant alleges that counsel's performance was deficient for failing to "properly impeach State's witness David Huff." Specifically, Defendant contends counsel erred by striking Mr. Huff's testimony regarding the substance of their argument and this testimony would have exposed the victim's untruthful statements.

In context, the State had inquired into the argument between Defendant and Mr. Huff. When Mr. Huff replied that he and the Defendant "were arguing over crack cocaine," counsel sought to strike that response. [*See Court's Exhibit 7.*] Defendant argues if Mr. Huff was allowed to explain the argument, it would have impeached the victim.

As the State correctly notes, the victim did not offer testimony on the substance of the phone conversation between Mr. Huff and Defendant; in fact, she did not remember a phone conversation between Mr. Huff and the Defendant. [*See State's Exhibit 1: pg. 238.*] Furthermore, the victim never testified regarding the substance of a phone conversation between Mr. Huff and Defendant. Since the victim never testified on the phone conversation, it would not have impeached the victim's testimony to permit Mr. Huff to explain the circumstances of the conversation. Based on the foregoing reasons, the Court finds Defendant has not shown that counsel's performance was deficient. This claim is denied.

<u>Ground Six</u>

Defendant contends that counsel was ineffective for "failing to impeach the alleged victim with her inconsistent statements." Defendant contends counsel should have utilized the victim's deposition statements regarding who turned out the apartment lights as grounds for impeachment. The Court finds the record reflects counsel did conduct a cross-examination of the witness. *[See Court's Exhibit 8: Trial Transcript, pgs. 272-88.*] Although it is true that counsel did not question the victim regarding who turned out the lights, this omission

- 8 -

did not result in a reasonable probability that the trial's outcome would have been different if that line of questioning was pursued. As such, the Court finds Defendant has not shown that counsel's performance was deficient or that he suffered prejudice.  This claim is denied.

Dkt. 6, Ex. 11 at 2-4.

Petitioner challenged the trial court's denial of his Rule 3.850 motion, raising six claims in his appellate brief.  On March 7, 2003, the state appellate court affirmed the trial court's decision per curiam, without written opinion (Dkt. 6, Ex. 13). *See Darity v. State*, 853 So. 2d 416 (Fla. 2d DCA 2003) (table decision). Petitioner's motion for a rehearing, *see* Dkt. 6, Ex. 14, was denied on April 29, 2003, see Dkt. 6, Ex. 15, and the mandate issued on May 28, 2003, *see* Dkt. 6, Ex. 16.

While his Rule 3.850 motion was pending, Petitioner filed a petition for writ of habeas corpus in the state appellate court alleging ineffective assistance of appellate counsel (Dkt. 6, Ex. 17). Petitioner raised five specific issues which he contended  appellate counsel should have presented on direct appeal. On November 9, 2001, the state district court issued an order per curiam, without written opinion, denying Petitioner's state habeas petition (Dkt. 6, Ex. 19). *See Darity v. State*, 804 So.2d 1254 (Fla. 2d DCA 2001) (table decision).

Petitioner filed his petition for federal habeas relief on August 25, 2003 (Dkt. 1). Petitioner raises five allegations of ineffective assistance of trial counsel and four allegations of ineffective assistance of appellate counsel. Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. §§ 2254(d)-(e) (Dkt. 8 at 13). Having reviewed the record, the parties arguments, applicable statutes, and controlling case law, for reasons set forth below, this Court agrees with Respondent.

**Standard of Review**

Since Petitioner's conviction was entered after the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, his petition is subject to the provisions thereof. The standard of review required in a federal habeas corpus proceeding is quite strict, resulting in a heavy burden on the petitioner to successfully overturn a state court conviction. Where, as here, a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (citation omitted).

A petitioner has the burden of overcoming all state court factual determinations by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. Where a petitioner has not "fairly presented" a federal constitutional claim to the state court, he has failed to exhaust his state court remedies. *Picard v. Connor*, 404 U.S. 270 (1971); *Rose v. Lundy*, 455 U.S. 509 (1982); *Anderson v. Harless*, 459 U.S. 4 (1982). The Supreme Court has rejected the theory that by presenting the facts on which an alleged constitutional violation is based a petitioner implicitly raises the claim. *Id.* at 6. The petitioner must make the state court aware that the claims asserted present federal constitutional issues. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir.), *cert. denied*, 525 U.S. 963 (1998).

The failure of a federal habeas petitioner to adhere to state procedural rules governing the timely presentation of claims will bar federal review of those claims in a subsequent federal habeas corpus proceeding. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Sims v. Singletary,* 155 F.3d 1297, 1311 (11th Cir. 1998). The federal habeas court must defer to the state court's interpretation of its procedural rules, and must enforce those rules as well as enforcing the procedural rulings of the state courts. *See Lindsey v. Smith*, 820 F.2d 1137 (11th Cir. 1989).

### Discussion

Grounds One through Five of the petition are foreclosed from review by this Court under 28 U.S.C. § 2254(b). Petitioner appealed his state-court convictions and sentences through Florida's state court system. He then filed an application for post-conviction relief in the trial court raising, *inter alia*, the issues presented in Grounds One through Five of the instant petition. After the trial court denied him collateral relief, Petitioner filed an appeal

in the state district court. As the appellate brief Petitioner filed confirms, however, he raised his claims in state law terms only, closing each argument by stating, with nonsubstantive variations, that "the Circuit Court denial of this issue, [sic] proves wholly erroneous in light of [the] record and laws, statutes [sic] of the State of Florida, and this Honorable Court should reverse the order and remand this case back to Circuit Court with appropriate directions." *See* Dkt. 6, Ex. 12 at 2, 5, 8, 11-13.

    Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  *See also Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights"). *See also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal of its denial" (citation omitted)).[3]

    In Florida courts, a petitioner is considered to have abandoned claims which appellate counsel did not properly brief for appeal. See *Simmons v. State*, 934 So.2d 1100, 1111 n.12 (Fla. 2006) (finding petitioner's claim that the prosecutor made improper remarks concerning the DNA evidence on petitioner's car seat was waived because the issue was not properly briefed); *Coolen v. State*, 696 So.2d 738, 742 n. 2 (Fla. 1997) (stating that a

---

[3]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

failure to fully brief and argue points on appeal "constitutes a waiver of these claims"). In *Duest v. Dugger*, the Florida Supreme Court emphasized that "merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived." 555 So.2d 849, 852 (Fla. 1990).

As clarified recently in *Baldwin v. Reese*, a decision focusing upon the requirement that a petitioner for federal habeas relief "fairly present" his claims in state court, the United States Supreme Court held that ["a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" 541 U.S. 27, 32 (2004). Petitioner's statements that he "is entitled to [a] fair trial" (Dkt. 6, Ex. 12 at 11), and that "counsel prejudice[d] [Petitioner's] constitutional right to [a] fair trial," *id.* at 12, standing alone, are insufficient to satisfy the "fair presentation" requirement

Likewise, the argument Petitioner presented to the state court in his motion for rehearing that the *Strickland* standard of review for ineffective assistance of counsel claims is not applicable to *pro se* litigants fails to satisfy the exhaustion requirement.[4] Even if the

---

[4]In his motion for rehearing, Petitioner argued that the state appellate court "overlooked controlling points of law or fact." Dkt. 6, Ex. 14.  In support of this assertion Petitioner contended that:

Lower tribunial's [sic] citing overall appellant's postconviction relief, 3.850, in the circuit court analysis section of order denying defendant's motion for postconviction relief as well as body of said order cites [sic] appellant did not meet standards of *Strickland v. Washington*, 466 U.S. 688 (1984), placing same high standards of law on appellant as formal pleading drafted by attorneys of law.  Appellant[']s motion was done *pro se* using a model form which included no direction for correctly drafting the motion, issues [sic] although they are factually taken from Defendant's case documents and were meritorious.

Denial on the bases [sic] of Appellant's not meeting the standards of *Strickland v. Washington*, 466 U.S. 688 (1984), places the lower tribunial [sic] as well as this Honorable Court in conflict with *Meagher v. Dugger*, 861 F.2d 1242 (11th Cir. 1988), cities [sic] allegations of *pro se* complaint are held to less stringent standard than formal pleading

(continued...)

- 13 -

motion for rehearing were read to present a substantive *Strickland* argument,[5] the claim would not be properly exhausted. As the United States Supreme Court recently held, "as a general matter, the burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised." *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005). It is well-established in Florida courts that authorities not cited and issues not raised in the briefs or on oral argument cannot be raised for the first time on motion for rehearing. *See Anderson v. State*, 532 So.2d 4, 6 (Fla. 2d DCA 1988); *Shell Oil Co. v. Dep't of Revenue,* 461 So.2d 959, 963 (Fla. 1st DCA 1984) ("[A]uthorities not cited and issues not raised in the brief or on oral argument cannot be raised for the first time on motion for rehearing" (citations omitted)).

Like Reese, Petitioner did not "fairly present" the federal dimension of his ineffective assistance of counsel claims in his appellate brief. *Baldwin v. Reese*, 541 U.S. at 32. The briefs he filed in the state district court did not indicate in any way that Petitioner was complaining that the trial court's denial of his claims was a violation of federal law. To the contrary, these issues were raised on direct appeal in state law terms only. *Baldwin*

---

(...continued)
drafted by lawyers.

In *Petty v. Card*, 195 F.3d 399, 401 [(8th Cir. 1999) (Murphy, J. dissenting)], a *pro se . . .* petitioner is not required to identify specific legal theories in order to be entitled to relief."

Dkt. 14 at (unnumbered).

[5]This Court finds Petitioner's argument that he was entitled to relief because his *pro se* status exempts him from application of the *Strickland* standard unpersuasive. In *McNeil v. United States,* the United States Supreme Court noted that "experience teaches that strict adherence to the procedural requirements . . . is the best guarantee of evenhanded administration of the law" for *pro se* litigants. 508 U.S. 106, 113 (1993); *see also Nelson v. Barden*, 145 Fed.Appx. 303, 311 n.10 (11th Cir. 2005)*; Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999).

requires a conclusion that Petitioner failed to alert the state courts to the federal nature of his ineffective assistance of appellate counsel claims. *Id.* The Court finds that Petitioner has failed to satisfy the requirement that he give the state court an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (citation omitted). *See also* 28 U.S.C. § 2254(b); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982) ("The state appellate courts [must have] a chance to mend their own fences and avoid federal intrusion.").

Exhaustion of the federal dimension of a state prisoner's habeas claim is a statutory requirement that the State did not expressly waive in this case. See 28 U.S.C. 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). *See also McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that the district court erred in finding that because the state failed to argue the procedural bar, the bar was waived and proceeded to consider the merits of the petitioner's claim). Because Petitioner abandoned these claims on appeal, they are now procedurally barred from review in state court.  *See State v. Mitchell*, 719 So.2d 1245, 1247 (Fla. 1st DCA 1997), *rev. denied*, 729 So.2d 393 (Fla. 1999).

A petitioner's claims or portions of claims that are not exhausted but would clearly be barred if returned to state court must be dismissed. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)*; Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here, it would be futile to dismiss the case to give Petitioner the opportunity to exhaust his claims because they could have and should have been raised on appeal during the Rule 3.850

proceedings. *See* Fla. R. Crim. P. 3.850(c).[6]  Because Petitioner did not present the federal dimension of his claims to the highest state court, they have not been properly exhausted and are now procedurally barred at the state level.

A federal court may still review the merits of Petitioner's claim despite the procedural bar if he can show both "cause for the default and prejudice attributable thereto" or that failure to address the claim on the merits would lead to a fundamental miscarriage of justice, often referred to as the "actual innocence" exception, *see Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause must ordinarily be something external to the petitioner. *Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir. 1995). To show prejudice, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152 (1982).

Petitioner offers no reason for his failure to raise the federal nature of these claims on appeal, and the Court discerns none that would amount to good cause to overcome a state procedural default. Having failed to allege, much less show, that any factors external to the defense prevented the presentation of the claims, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier,* 477 U.S. 478 (1986);  *Wainwright v. Sykes*, 433 U.S. at 90.

The exception to the "cause-and-prejudice" requirement recognized in *Sykes* providing that the standard developed therein would not bar habeas relief for a victim of a "miscarriage of justice" is also unavailing to Petitioner's cause. *See id.* at 90. A petitioner in a collateral proceeding who wishes to establish his actual innocence to avoid a

---

[6]Under Fla. R. Crim. P. 3.850(c), "grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal" are procedurally barred from collateral review.

procedural bar to consideration of the merits of his underlying claim must demonstrate that "a *constitutional* violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327 (1995) (emphasis added).  This gateway applies only if the petitioner can demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell,* __ U.S. __, 126 S.Ct. 2064, 2076-77 (2006); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. at 327-28).

In this context, Petitioner must show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Id*; *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). *See also Schlup v. Delo*, 513 U.S. at 324.  Petitioner does not assert that he has "new" reliable evidence of factual innocence and there is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of this claim. *See  Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of Grounds One through Five.  *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

**Appellate Counsel**

In the remaining four claims raised in the petition, Petitioner contends that he was denied effective assistance of counsel on direct appeal. These claims were raised and rejected in Petitioner's state habeas proceedings (*see* Dkt. 6, Ex. 17). To establish a prima facie claim of ineffective assistance of counsel, Petitioner must show that counsel's

performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The Eleventh Circuit has held that "[w]hen applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998).

The *Strickland* standard of review applies to ineffective assistance of appellate counsel claims.  *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  In *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue.  To the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52. When evaluating claims of ineffective assistance of appellate counsel, the Florida courts apply a standard similar to that enunciated in *Strickland.* "The '[p]etitioner must show (1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance and (2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result.'" *Smith v. State*, 931 so.2d 790, 805 (Fla. 2006).

Even though the state court entered its decision rejecting Petitioner's request for habeas relief without written opinion, the decision is entitled to the same deference as if it

had entered written findings to support the decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245 (11th Cir. 2002), *cert. denied*, 538 U.S. 906 (2003).

**Ground Six**

Petitioner contends that appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in allowing State witnesses Janette Saurbier and Damon Desautel to present hearsay testimony. Citing *Freeman v. State*, Respondent argues that this claim should be denied because the argument constitutes an improper attempt to circumvent Florida's rule against using post-conviction proceedings to obtain a second appeal. 761 So. 2d 1055, 1071 (Fla. 2000). *See also Swafford v. Dugger*, 569 So.2d 1264, 1266 (Fla. 1990) ("Habeas corpus is not to be used for second appeals" (citations omitted)); *Porter v. Dugger*, 559 So. 2d 201, 203 (Fla. 1990) ("[A]n allegation of ineffective counsel will not be permitted to serve as a means of circumventing the rule that habeas corpus proceedings do not provide a second or substitute appeal."); *Blanco v. Wainwright*, 507 So. 2d 1377, 1384 (Fla. 1987) (same). Respondent contends that the trial court's finding rests upon an independent and adequate state law ground barring federal review. This Court disagrees.

Generally, federal courts will not review questions of federal law decided by a state court if its decision rests on a state law ground that is both "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). Adequate in the procedural context requires that the rule be "firmly established and regularly" applied. *Id.*

Under Fla. R. Crim. P. 3.850(c), "grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal" are procedurally barred from

collateral review.  The Florida Supreme Court extended this rule in *Cherry v. State,* holding that Rule 3.850(c) cannot be circumvented by couching such claims in terms of ineffective assistance of counsel for failure to preserve or raise the underlying issues on appeal. 659 So.2d 1069, 1072 (Fla. 1995).

On August 26, 2004, the Florida Supreme Court readdressed this issue, however, concluding that the rule set out in *Cherry* is not applicable where the underlying issue in an ineffective assistance of counsel claim was rejected on direct appeal because the issue was not preserved for review rather than decided on the merits. *Pietri v. State,* 885 So.2d 245, 256 (Fla. 2004). The Florida Supreme Court held that because Pietri's claim that trial counsel was ineffective for failing to properly preserve the issue for review was not presented and decided adversely to Pietri on direct appeal, the trial court erred in denying his claim as procedurally barred. *Id.  See also McLevy v.* State, 849 So.2d 431, 432 91st DCA 2003) (failure to object to videotapes that had been admitted into evidence being allowed into the jury room during deliberations); *Walker v. State*, 765 So.2d 854, 855 (Fla. 5th DCA 2000) (finding the *Cherry* principle inapplicable when there is a specific accusation directed toward trial counsel's performance); *Curtis v. State*, 757 So.2d 513, 514 (Fla. 2d DCA 1998) (finding that ineffective assistance of counsel claims asserting that trial counsel failed to register an objection or failed to file an appropriate motion to preserve potential error for review were not procedurally barred); *Knight v. State*, 710 So.2d 648, 649 (Fla. 2d DCA 1998) (finding that the rule stated in *Cherry* does not apply to certain ineffective assistance of counsel claims).

In a recent decision examining this shift in Florida law, the Eleventh Circuit found that because the Florida courts are no longer routinely applying the procedural bar to ineffective

assistance of counsel claims based on trial counsel's failure to preserve an issue for appeal, the independent and adequate state law ground doctrine no longer bars a federal habeas court from reviewing said claims on the merits. *Smith v. Crosby*, 159 Fed.Appx. 76, 78-79 (11th Cir. 2005) (citing *Pietri,* 885 So.2d at 256).

In the present case, the state district court denied Petitioner's state habeas petition without written opinion. In its appellate brief, the State argued that Petitioner's claim was barred by *Torres -Arboleda v. Dugger*, 636 So.2d 1321, 1323 n.2 (Fla. 1994). The decision in *Torres-Arboleda*, like the later decision in *Cherry*, relied on the holding in *Medina v. State* that "[a]llegations of ineffective assistance cannot be used to circumvent the rule that postconviction proceedings cannot serve as a second appeal," 573 So.2d 293, 295 (Fla. 1990), to support the finding that the petitioner's claims were procedurally barred.

While unpublished decisions are not considered binding precedent in this circuit, *see* 11th Cir. R. 36.2, the reasoning in *Smith* is persuasive. Here, Petitioner's claim of ineffective assistance of counsel is based on appellate counsel's failure to present additional argument in support of a claim raised on direct appeal; in state court, the State argued that Petitioner was precluded from using an ineffective assistance of counsel claim to circumvent the rule that habeas proceedings cannot serve as a second appeal; and the state court rejected the claim in an unwritten opinion. *See Darity v. State*, 804 So.2d 1254 (Fla. 2d DCA 2001) (table decision). The Court finds that under the clarifications in subsequent Florida law, application of the procedural bar to Petitioner's ineffective assistance of appellate counsel claim does not constitute an "independent and adequate" state law ground barring federal review. *See Smith v. Crosby*, 159 Fed.Appx. at 79; *Pietri*, 885 So.2d at 256. It will,

therefore, address the merits of the claim.[7]

This Court's finding that the state court's application of a procedural bar to Petitioner's ineffective assistance of counsel claim was incorrect does not automatically entitle Petitioner to federal habeas relief. To the contrary, this finding merely allows the merits of Petitioner's claim to be addressed. To be eligible for habeas relief, he must demonstrate that his custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A burden that, for reasons discussed below, Petitioner has failed to meet.

First, trial counsel did not object to Desautel's testimony at trial, as required under Florida's "contemporaneous objection" rule, *see* Dkt. 6, Ex. 20, Vol. III at 294-99, and Petitioner has advanced no explanation for the failure to object. *See Fraterrigo v. State*, 151 Fla. 634, 638-39 (Fla. 1942). Under both Florida and Federal law, where matters complained of were not preserved in the trial court, counsel is procedurally barred from raising them on direct appeal, and therefore cannot be deficient for failing to attempt to do so. *Id.*; *see also Jackson v. Singletary*, 931 F.2d 712 (11th Cir. 1991), *cert. denied*, 502 U.S. 973 (1991); *Porter v. Crosby*, 840 So.2d 981, 986 (Fla. 2003).

Petitioner also contends that appellate counsel was ineffective for failing to "fully and completely present all the facts to support" the claim that the trial court erred in overruling

_____

[7]This Court may address the merits of Petitioner's ineffective assistance of counsel claim, notwithstanding the fact that the state court failed to reach the merits of this claim. First, § 2254(a) provides that this Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner's ineffective assistance of counsel claim is a claim that his Sixth Amendment right to counsel was violated. *See Strickland,* 466 U.S. at 687. Next, the prohibition contained in § 2254(d) against granting an application for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings, except in certain specified circumstances, is not applicable here because the state court did not adjudicate this ineffective assistance of counsel claim on its merits -- it imposed a state procedural bar. 28 U.S.C. § 2254(d).

trial counsel's objection to Ms. Saurbier's testimony as hearsay.  In Florida courts, the immediate outcry of the victim of a sexual battery and her disclosure of the event at the earliest possible moment are considered highly indicative of the truthfulness of her statements and have been accepted by courts as competent evidence to substantiate and support the charges made by her.  Here, the theory of Petitioner's defense was that he and the victim engaged in consensual sex.  Aware that the State intended to use Ms. Saurbier as an "outcry" witness to rebut Petitioner's consent defense, trial counsel objected to her testimony as hearsay, arguing that the State was attempting to introduce testimony that went beyond the level of detail provided by the victim when she testified (Dkt. 6, Ex. 20, Vol. III at 314).  His objection was overruled.  *See Pacifico v. State*, 642 So.2d 1178, 1186 (Fla. 1st DCA 1994).

Contrary to Petitioner's assertions otherwise, appellate counsel presented a concise and well-reasoned argument in support of the claim that the trial court erred in allowing Ms. Saurbier's testimony under the first complaint exception to the hearsay rule because the testimony went beyond the fact of the report of the sexual battery when she provided details of the offense related to her by the victim.  *See Burgess v State*, 644 So.2d 589, 591 (Fla. 4th DCA 1994). Acknowledging that appellate counsel raised the "first complaint"[8] issue in the appellate brief, Petitioner complains that appellate counsel was ineffective in failing to "fully and completely present all the facts to support this claim" because he did not inform the appellate court that "this was in fact [the victim's] third (3rd) opportunity to complain, and between her first opportunity and her third, she smoked some marijuana . . . and drank

---

[8]The "first complaint" hearsay exception is applied in sexual battery cases to rebut the defense of consent.  *Roundtree v. State*, 229 So.2d 281, 284 (Fla. 1st DCA 1969) (finding that testimony regarding a "[c]omplaint [made] soon after the occurrence is permissible, not to prove the crime itself, but to rebut the inference of consent which might be drawn from . . . prolonged silence.").

some wine . . . and some beer or a beer" (Dkt. 1 at 9C-9D).

As the record demonstrates, Petitioner's assertion that appellate counsel was ineffective for failing to argue that Ms. Saurbier's testimony did not qualify for the "first complaint" exception to the hearsay rule because the victim's recount of the events to Ms. Saurbier at her home was actually the victim's "third opportunity" to complain is incredible.

The sexual battery commenced in the living room. When the victim broke loose and attempted to get to the apartment door, Petitioner "tackled" her, threw her to the kitchen floor, and proceeded to beat and choke her.  When Petitioner led the victim to the bedroom, she had ceased to struggle, and the Petitioner began having sexual intercourse with her on her bed. According to the victim, a few minutes before Ms. Saurbier arrived at the apartment, Petitioner left the bed, allowing  the victim to wrap a blanket around herself and walk into the living room.  Petitioner instructed the victim not to get dressed because they weren't "through" yet (Dkt. 6, Ex. 20, Vol. III at Tr. 260).  When Ms. Saurbier knocked on the door, Petitioner told the victim to get dressed and answer the door.

Ms. Saurbier went to the victim's house to take her some food.  When the victim did not answer the door, Ms. Saurbier placed the handle of the bag containing the food around the door handle and started walking down the stairs.  It was at this time that Petitioner allowed the victim to open the apartment door.  When she saw Ms. Saurbier going down the stairs, the victim stepped outside the apartment and moved toward her.  Mrs. Saurbier testified that once outside, the victim was sobbing as she attempted to whisper something, but her speech was so incoherent that Ms. Saurbier could not understand what was being said.

The victim testified that she was disoriented and confused when Petitioner allowed her to open the door and speak with Ms. Saurbier.  The victim further testified that she was afraid to leave with Ms. Saurbier because Petitioner threatened to kill both her and her three-year-old son if she told anyone about the attack.  The victim recalled attempting to ask Ms. Saurbier to telephone the police, but she could not seem to form the right words.

According to Ms. Saurbier, the victim was sobbing hysterically when she came out of the apartment, and the words she did manage to form made no sense. When the victim did not invite Ms. Saurbier inside, she concluded that the victim was distraught because her boyfriend had been arrested the previous afternoon.  When attempts to convince the victim to accompany her home failed, Ms. Saurbier went home alone.  The victim then went back inside the apartment. This was, according to Petitioner, the victim's "first" opportunity to complain about the events of the evening -- albeit unsuccessful.

Shortly after Ms. Saurbier departed, the victim told Petitioner that she had asked Ms. Saurbier to telephone the police. Believing that the police were enroute, Petitioner became very angry and fled. Afraid that Petitioner would return, the victim armed herself with a knife from the kitchen and barricaded herself in her bedroom.

According to Ms. Saurbier, although she did not understand what the victim was saying, her observations of the victim's emotional state, combined with the darkness inside and outside the apartment and the amount of time that elapsed before the victim answered the door, caused her to believe that something might be wrong inside the victim's apartment.  Ms. Saurbier drove to the house she shared with her boyfriend, located approximately 5 minutes from the victim's apartment. She explained her concerns to her

boyfriend, Damon Desautel, and he agreed to accompany Ms. Saurbier back to the victim's apartment.

When they arrived at the apartment, Desautel told Ms. Saurbier to wait in the car, and he went to the victim's door and knocked. Afraid that Petitioner might be returning to continue the attack, the victim stayed huddled inside the bedroom. When Desautel identified himself, the victim let him inside the apartment.  This was, according to Petitioner, the victim's "second" opportunity to complain about the attack.

According to Desautel, the victim was distraught, but she was able to communicate well enough for him to understand that someone had been inside the apartment and hurt her.  Desautel tried to get the victim to report the incident to the police. When she refused, he convinced her that she needed to at least leave the apartment with him. As the victim gathered some clothing, Desautel checked the rooms to make sure that nobody was hiding inside.  He then escorted the victim downstairs, helped her get into the car, and drove home.

Ms. Saurbier stated that the victim was extremely upset during the 5-minute ride from the victim's apartment to Ms. Saurbier's house.  Ms. Saurbier attempted to calm the victim and reassure her that things would be "okay."  Once they were inside the house, Ms. Saurbier sat on the couch comforting the victim as she related what had happened during the night.

Petitioner asserts that appellate counsel was ineffective for not arguing that Ms. Saurbier's testimony regarding the details of the sexual battery related to her by the victim after they returned to Ms. Saurbier's house should have been excluded as hearsay because it was told to her during the victim's "third" opportunity to complain. Having reviewed the

record and the parties' arguments, the Court finds that Petitioner's assertion that appellate counsel was ineffective for failing to present this argument lacks merit. As the record confirms, the victim attempted to report her "complaint" but was prevented from doing so by the effects the trauma of the attack had on her ability to communicate.

Petitioner further asserts that appellate counsel was ineffective for failing to inform the appellate court that the victim's statements to Ms. Saurbier were made after the victim "smoked marijuana and drank some wine and a beer." The record confirms that the victim testified that after she barricaded herself in her bedroom, she smoked marijuana. According to the victim, this was approximately 10-15 minutes before Desautel arrived at the apartment. The victim stated to the investigating officer that "she had one beer to drink . . . during this incident." There was no testimony presented during the trial that after she arrived at Ms. Saurbier's house, the victim "had a glass of wine" while she "tried to calm down" (Dkt. 1, Appx. B at 17). While this statement may have had value for impeachment purposes at trial, it does not support Petitioner's argument that appellate counsel failed to properly brief the claim that Ms. Saurbier's testimony was inadmissible hearsay.

To prevail on this claim, Petitioner must first show that appellate counsel's failure to present the omitted information was objectively unreasonable. *Smith v. Robbins*, 528 U.S. 259 (2000). It is well-settled that appellate counsel who files a merits brief need not raise every nonfrivolous claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (effective appellate counsel "winnows out" weaker arguments even though weaker arguments may be meritorious). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument, much less deciding which facts in the record best support an argument

that is presented for review. *Smith v. Robbins*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")).

Appellate counsel's decision regarding which facts to present in support of the claim that the trial court erred in allowing Ms. Saurbier to testify regarding the victim's statements to her was a strategic decision that, under the circumstances of this case, does not warrant a finding that Petitioner was inadequately or ineffectively represented. *See Jones,* 463 U.S. at 753. "The widespread use of the tactic of attacking . . . counsel by showing what 'might have been' proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (quoting *Waters v. Thomas,* 46 F.3d 1506, 1514 (11th Cir. 1995) (*en banc*)).

The Court concludes that Petitioner has failed to establish that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d). This claim, therefore, lacks merit.

**Ground Seven**

In Ground Seven, Petitioner contends that appellate counsel was ineffective for failing to assert that the trial court erred in overruling trial counsel's objection to Detective Denise Schmidt's testimony that the photographs used in compiling the photo array used for the out-of-court identification "came from our police records," *see* Dkt. 6, Ex. 20, Vol. III

at 351.  The record reflects that prior to opening statements, trial counsel moved the trial

court to limit testimony regarding the source of the photographs:

| | |
|---|---|
| Trial Counsel: | When Ms. Lowndes whenever [sic] she's going to testify there may be testimony that she identified a photograph of [Petitioner].  I certainly don't – my concern is that through her or through law enforcement, if they're going to be called, would indicate that it was any kind of a mug shot, booking photo or anything of that nature. |
| Court: | Have you seen it? |
| Trial Counsel: | No, I have not. |
| Court: | I think they ought to show it to you. |
| Trial Counsel: | That's fine.  We'll ask the detective to provide it.  I don't have it in court here Judge. |
| | . . . . |
| Court: | [B]efore you use it you have to show defense counsel the photograph.  Under what circumstances is she going to identify the photograph?  What kind of a photograph are we talking about?. . . Something put together by the police? |
| Prosecutor: | Yes, sir. |
| Trial counsel: | Since we're getting ready for openings, I would make sure since – |
| Prosecutor: | Photopack D.  You see it out there |
| Trial Counsel: | No, I don't. . . . |
| Court: | We just want to be sure that the defense sees the photo.  It's a photopak, I understand. |
| Trial Counsel: | I just want to make sure that nothing indicated that it's a mug shot or booking sheet, computer sheet.  I just want to make sure that nothing gets said or testified to or slipped out or anything unintentionally or whatever, that nothing is talked about any mug shots, booking sheets off the computer. |

Dkt. 6, Ex. 20, Vol. III at 222-25.  When Detective Schmidt was called to the stand, she

testified as follows:

| | | |
|---|---|---|
| Prosecutor: | Did you identify a suspect? |
| Schmidt: | Yes, I did. |
| Prosecutor: | Were you able to identify that suspect and confirm the identification by photographs?  And furtherance of that question, I ask you to look at what is in evidence at State's Exhibit Number Ten.  Do you understand my question? |
| Schmidt: | Yes. |
| Prosecutor: | All right.  Could you tell us what you did in the way of showing photographs? |
| Schmidt: | This is considered a photopak.  It is six separate photos of different individuals that came from our *police records*.  They are displayed in this.  I show the victim the set of photographs. |

Dkt. 6, Ex. 20, Vol. IV at 351 (emphasis added).

Trial counsel objected on the ground that the use of the phrase "police records" was a reference to Petitioner's previous "police contact." *Id.* at 352.  The prosecutor argued that the "photos could have come from – they said records, not arrests and certainly no one –" *Id.* The trial court stated that it understood the objection to be that an "inference to be drawn from [the reference to police records] is 'why would anybody have their picture at a police station.' . . . My question is, is that a reasonable inference to be drawn?" Following a discussion of the precise language trial counsel sought to exclude in the motion in limine, the trial court overruled his objection. The trial court also denied trial counsel's motion for a mistrial, finding that there was no reference to Petitioner's "arrest" record.

After the jury was removed from the courtroom, Detective Schmidt was cautioned not to make any further reference to "the source of the photographs as coming from police records, booking records, criminal records, prior felons, anything at all like that." *Id.* at 357. The following exchange then occurred:

Court:      Have you ever done – out of curiosity, have you ever done it in any other
            fashion than using police photographs?  Do you have access, in other
            words, to other photographs?

Schmidt:    Our agency collects photographs from people that have employment
            records that – request a taxi driver's license.  We take photographs of an
            abundance of amount of people other than just police or other than just
            for criminal type of activity. But, yes, we do.

Court:      Those photographs are on record in the police department?

Schmidt:    We have them in our video booking machine which contains two
            separate areas.  It contains criminal, but it also goes over to employment
            and other people that come in for other reasons.  And I have used other
            – that area in obtaining photopacks before

Court:      All right.  That satisfies the question.

*Id.* at 358.  Given Detective Schmidt's testimony that a reference to the "police records"
included photographs of individuals with criminal and noncriminal backgrounds, there was
no issue to raise on direct appeal. "An attorney. . . is . . . under an ethical obligation to
refuse to prosecute a frivolous appeal." *McCoy v. Court of Appeals of Wisconsin, Dist. 1*,
486 U.S. 429, 436 (1988).

Petitioner argues that had Detective Schmidt not referred to "police records" during
her testimony, he would not have been "forced to take the stand to clarify his prior
involvement with authorities." Petitioner does not explain how taking the stand to testify in
his own behalf prejudiced his defense. Thus, Petitioner has failed to meet either prong of
the *Strickland* test.

Petitioner has failed to demonstrate that the state court's rejection of this claim
contradicts or is an unreasonable application of clearly established Supreme Court law. 28
U.S.C. 2254(d). The Court concludes that Petitioner has not established that he is entitled
to federal habeas relief on Ground Seven.

**Grounds Eight and Nine**

Because Grounds Eight and Nine allege that appellate counsel was ineffective in presenting argument on direct appeal that certain comments made by the prosecutor during the trial were improper, they will be discussed together.  In Ground Eight, Petitioner contends that appellate counsel was ineffective in failing to "fully" develop the claim that the prosecutor made improper comments during closing argument, citing as examples references to the victim's injuries and what Petitioner characterizes as the prosecutor's attempt to convince the jurors that during closing argument trial counsel would attempt to "deceive" them into entering a verdict contrary to the law. Similarly, in Ground Nine, Petitioner asserts that appellate counsel was ineffective for not "properly" arguing that the prosecutor misrepresented the evidence during closing argument and made "other improper comments" during the trial.

The crux of Grounds Eight and Nine is Petitioner's complaint that appellate counsel should have included additional citations to the record in the appellate brief that, Petitioner contends, would further support the argument that the prosecutor's allegedly improper comments tainted the jury and prejudiced Petitioner's right to a fair trial. As Respondent correctly notes, trial counsel raised five objections to comments made by the prosecutor during closing argument concerning: (1) the argument he anticipated trial counsel would make during closing; (2) Petitioner's responses to questions about the alarm system in his mother's house; (3) Mrs. Darity's responses to questions regarding her failure to inform anyone that Petitioner was at home with her when the victim was sexually battered; (4)

Mrs. Darity's refusal to allow law enforcement officers to take photographs of the windows from the inside of the house; and (5) trial counsel's suggestion that the victim did not "put up enough of a fight" (Dkt. 6, Ex. 20, Vol. V at 547; 580; 581; 583; 584). These five issues were properly preserved by contemporaneous objections.

While appellate counsel's brief did not include a discussion of the prosecutor's comment regarding the argument he anticipated trial counsel would make during closing, appellate counsel did raise the remaining four issues.  Appellate counsel also directed the appellate court's attention to comments made by the prosecutor regarding Petitioner's prior convictions and the DNA evidence. Contending that the prosecutor "argued evidence that was not in evidence and indirectly attacked the Defendant" (Dkt. 6, Ex. 1 at 14), appellate counsel urged the appellate court to find that the cumulative effect of the prosecutor's allegedly improper comments warranted remand for a new trial.  The state appellate court implicitly rejected this argument when it affirmed Petitioner's conviction.  Appellate counsel is not ineffective merely because he does not prevail. *See Haliburton v. Singletary*, 691 So. 2d 466, 472 (Fla. 1997) (appellate counsel's initial brief not considered inadequate because it focused on one technical aspect of the issue presented). The Sixth Amendment does not require appellate advocates to raise every non-frivolous issue, and even though an issue not appealed might have been successful, the actions of appellate counsel must be viewed in their entirety. *Heath*, 941 F.2d at 1131.

As discussed above, under Florida's "contemporaneous objection" rule, comments made by the prosecutor during closing arguments that went without objection are not properly preserved for appeal. *See Jackson v. Singletary*, 931 F.2d at 715, *cert. denied*, 502 U.S. 973 (1991); *Porter v. Crosby*, 840 So.2d 981, 986 (Fla. 2003). Since trial counsel

did not object to the prosecutor's references to the victim's injuries during his closing, this argument was not available to appellate counsel.

Petitioner further contends that appellate counsel was ineffective for failing to argue that the "prosecutor indirectly attacked [Petitioner's] right to remain silent by stating that the DNA was never contested after all the evidence came together. [The] [f]act [Petitioner] does not say anything about consent of allege [sic] victim until he takes the stand and testifies is constitutionally irrelevant to substantive issue of guilt or innocence" (Dkt. 1 at 10-G). Petitioner asserts that "the inference prosecutor implied was [Petitioner] changed his story after DNA results came back, but having failed to talk to [Petitioner] this is a wrongful speculation on states [sic] part" (Dkt. 1 at 10F).

The Court finds that Petitioner's constrained reading of the prosecutor's comments is not supported by the record. There were actually three references to the DNA testing made during closing argument. The prosecutor referred to the DNA testing during his closing argument, stating:

> Then, at that point in your analysis, start thinking about the DNA testimony. The probability that the sperm found in [the victim's] vagina was from anyone else, less than one and one hundred and twenty-two million among the population of black males and tens or even hundreds of millions lower from white. And, categorically, it was not David Huff's. Put that all together with the testimony of [the victim] herself.

Dkt. 5, Ex. 20, Vol. V at Tr. 552. During his closing, trial counsel argued:

> Now, one thing is we've heard an awful lot about DNA and we've heard an awful lot about whatever, and its been pretty interesting. I've been kind of just amazed and stunned by it, but that's never been an issue ever. Never has that been an issue, but we've heard a bunch about it. I tried to stipulate, I tried to do whatever, and we kept hearing about it. Fair enough.

Dkt. 5, Ex. 20, Vol. V at Tr. 555-56. In rebuttal, the prosecutor observed:

> The defense attempts to blindly blow off the DNA analysis. The defense says that's never been an issue – it's never been an issue. I respectfully submit to you that it's never been an issue since it came back one and a hundred and twenty-two million because that's the point at which the scientific evidence met the observations of the victim, the eye witness to the crime as well as Saurbier and Desautel and it all came together.

Dkt. 5, Ex. 20, Vol. V at Tr. 584. The record clearly belies Petitioner's assertion that this was a comment on his exercise of his "right to silence." The prosecutor's comments related to testimony of the witnesses, as well as the evidence in the record, rather than Petitioner's right to remain silent. As in *Dodd*, "it was not the prosecutor's manifest intent to refer to [Petitioner's] silence and . . . the comment was not of such a character that would lead the jury to 'naturally and necessarily' understand it to be a comment on [Petitioner's] silence." *See United States v. Dodd*, 111 F.3d 867, 870 (11th Cir. 1997).

Here, the record reflects that appellate counsel filed a thorough and well-reasoned brief on direct appeal. This Court is satisfied that appellate counsel's performance was not deficient under prevailing professional norms. *Strickland*, 466 U.S. at 688.

In summary, the Court determines that the state court's decision to reject Petitioner's claims that appellate counsel rendered ineffective assistance is not contrary to or an unreasonable application of federal law or an unreasonable application of the law to the facts. *See* 28 U.S.C. § 2254(d). Grounds Eight and Nine do not warrant habeas corpus relief.

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2.  The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on September 27, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:jsh

Copy furnished to:
All Parties/Counsel of Record