# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

KENNETH DARITY,

      Petitioner,

v.                                   Case No. 8:03-CV-1829-T-30MAP

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____/


## **O R D E R**

Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas

corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his two convictions for

sexual battery (Dkt. #6, Ex. 20, Vol. I, p. 62).  Petitioner's Section 2254 petition was denied

(Dkt. #31) and Petitioner appealed.  The United States Court of Appeals for the Eleventh

Circuit issued a certificate of appealability (Dkt. #39).[1]  The Eleventh Circuit found that

Petitioner had exhausted his state remedies regarding his claim of ineffective assistance of

---

[1] The Eleventh Circuit granted a certificate of appealability on the following issue:

Whether the district court erred in finding that appellant failed to exhaust his state court
remedies with regard to whether trial counsel was ineffective for failing to impeach the
victim's testimony.

trial counsel for failure to impeach the victim's testimony.[2]  Consequently, the case was

remanded for consideration of the merits of this specific claim of ineffective assistance of

trial counsel.

## Standard of Review

Because this action commenced after April 24, 1996, Section 2254(d), as amended by

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this

proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert.*

*denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard

for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in
> > the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted

this deferential standard:

---

[2]  Petitioner presented this claim as ground four of his federal habeas petition. (Dkt. #1).  This court
denied  the claim (Dkt. #31, pp. 19-24) as procedurally barred because Petitioner alleged a different factual
basis for the claim than he presented to the state court in his Rule 3.850 motion.  The remand applies only
to Petitioner's ineffective assistance claim presented in ground four of his federal habeas petition.

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Petitioner bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Petitioner's petition is subject to the provisions of the AEDPA because his conviction was

entered after the AEDPA was enacted. Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection (Dkt. #6, Ex. 11) of Petitioner's post-conviction claim of ineffective assistance of trial counsel.

## Ineffective Assistance of Counsel

Petitioner claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690-91. Petitioner cannot meet his burden by showing only that counsel chose an ineffective course:

The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

## Facts[3]

Petitioner was a friend of the victim's boyfriend and frequently stopped by the apartment the victim and her boyfriend shared. Petitioner had previously "made a pass" at the victim which she rejected. Petitioner told the victim that her boyfriend was cheating on her. On April 17, 1997, the victim's boyfriend was arrested. The following evening, on April 18, 1997, Petitioner appeared at the victim's residence and she let him in. Thereafter Petitioner told the victim to take off her jacket. When she refused, Petitioner became angry, hit the victim, began strangling her, and hit her head on the floor. The victim attempted to scream but the Petitioner put his hand over her mouth. Petitioner took the victim into the

---

[3] This summary of facts derives from Petitioner's brief on direct appeal (Dkt. #6, Ex. 1) and testimony adduced at trial.

living room where he made her perform oral sex upon him.  Petitioner then took the victim into the bedroom where he put his mouth on her vagina and had intercourse with her.  Petitioner threatened to kill the victim's son if she told anyone about the incident.

After Petitioner left the apartment, Janette Saurbier and her boyfriend, Damon Desautel, took the victim to their house and the victim told them that Petitioner had raped her and tried to strangle her.  The victim reported the incident to police and Petitioner was later arrested and charged with three counts of sexual battery.  Following a jury trial, Petitioner was convicted of two counts of sexual battery[4] and sentenced as a habitual felony offender to concurrent terms of thirty years imprisonment.

## Discussion

In ground four of his federal habeas petition, Petitioner argues that trial counsel rendered ineffective assistance by failing to use the victim's statements from a sex crime interview and her pretrial deposition to impeach her trial testimony.  Darity failed to specifically delineate each of his bases for relief in one discrete claim in his state Rule 3.850 motion.  Rather, he generally presented his allegations: (1) in ground one of his Rule 3.850 motion (Dkt. #6, Ex. 6) in which he alleged ineffective assistance of counsel for failure to properly move for a judgment of acquittal and (2) in ground six of his Rule 3.850 motion in which he alleged ineffective assistance for failure to impeach the victim with an allegedly inconsistent statement about who turned off the lights in the apartment where the offense occurred.  In its order vacating and remanding this case, the Eleventh Circuit held that

---

[4] The jury acquitted Petitioner of the third count of sexual battery.

"Darity sufficiently exhausted the claim in his state post-conviction motion by referring to the impeachment generally in one section of his motion and in another specifying the particular areas where impeachment was appropriate" (Dkt. #41, p. 4). Consequently, ground four of the federal habeas petition is exhausted and the court now considers the merits of each of Petitioner's nine bases for relief.[5]

---

[5] Although Petitioner argued in the discussion of ground one of his Rule 3.850 motion that counsel failed to impeach the victim with various allegedly inconsistent statements, the state court rejected the claim in the context of counsel's alleged failure to move for a judgment of acquittal because that is how Petitioner framed his substantive claim (Dkt. #6, Ex. 6, p. 4). The state post-conviction court did not address whether counsel rendered ineffective assistance for failing to impeach the victim with the statements Petitioner now challenges:

> Defendant contends that counsel was ineffective for "not moving for a proper judgment of acquittal at the close of all evidence after properly introducing evidence negating defendant's alleged guilt." Defendant argues that counsel should have moved for a judgment of acquittal at the close of all evidence "after introducing evidence not apparent from the record."
>
> The record reveals that at the close [of] the State's case counsel argued an extensive motion for judgment of acquittal. Likewise, at the close of the evidence, counsel renewed that argument and the Court again denied the motion. Since counsel had previously advanced an argument before the Court, it would be unnecessary, and mundane, to repeat that identical argument. The Court finds the record conclusively refutes Defendant's allegations and this claim is denied.

(Dkt. #6, Ex. 9, p. 2).

In ground six of his Rule 3.850 motion, Petitioner argued that counsel rendered ineffective assistance for failing to impeach the victim with her allegedly inconsistent statement about who turned off the lights in the apartment where the offense occurred. The state court rejected ground six of Petitioner's Rule 3.850 motion:

> Defendant contends that counsel was ineffective for "failing to impeach the alleged victim with her inconsistent statements." Defendant contends counsel should have utilized the victim's deposition statements regarding who turned out the apartment lights as grounds for impeachment. The Court finds the record reflects counsel did conduct a cross-examination of the witness. Although it is true that counsel did not question the victim regarding who turned out the lights, this omission did not result in a reasonable probability that the trial's outcome would have been different if that line of questioning was pursued. As such, the Court finds Defendant has not shown that counsel's performance was deficient or that he suffered prejudice. This claim is denied.

(continued...)

<u>Claims 1 and 3</u>

In his first claim, Petitioner argues that the victim stated to police, as evidenced by the police report of the incident, that Petitioner arrived at her apartment at 11:30 p.m.. In the sex crime interview[6], the victim stated Petitioner arrived at 10:45 p.m.. In her deposition, the victim testified that she did not remember when Petitioner arrived. At trial, the victim testified that he arrived after 9 p.m.. In both claims 1 and 3, Petitioner argues that the victim in her sex crime interview stated that the assault ended at 11:59 p.m., a statement that conflicted with both her deposition testimony and her trial testimony. Petitioner contends that the victim's statements conflict with those of other state witnesses and that counsel should have impeached the victim's trial testimony with her prior statements.

At trial, the victim testified on direct examination that she could not remember the specific time that the Petitioner arrived at her house, only that he arrived "after nine o'clock." (Dkt. #6, Ex. 20, Vol. III, p. 254). On cross-examination, trial counsel questioned the victim about the different times given for Petitioner's arrival:

> Counsel:       Okay. And do you recall the time that you believe [Petitioner] came over?

---

[5](...continued)
(Dkt. #11, pp. 3-4) (court's record citations omitted). The state post-conviction court's orders denying relief on Petitioner's Rule 3.850 motion includes no specific discussion or rejection of Petitioner's claims of ineffective assistance based on the statements he now challenges in this federal habeas petition.

[6] Petitioner filed as an exhibit to his petition a copy of what he calls a "sex crime" interview (Dkt. #1, Ex. A). The report of this interview includes statements from witness Janette Saurbier in what is called an "outcry interview" (Dkt. #1, Ex. A, p. 7). The court refers to these documents as the "sex crime interview" and "outcry interview" as referenced by Petitioner in his petition. The court notes that Petitioner's exhibits fail to include complete copies of the police report, sex crime interview, or the depositions of the victim, Saurbier and Detective Denise Schmidt.

| | |
|---|---|
| Victim: | No, I don't. |
| Counsel: | Now, you talked to - - pursuant to the questions by the state, you talked to Detective Schmidt from the St. Petersburg Police Department, correct? |
| Victim: | Yes, I did. |
| Counsel: | Do you recall - - and you gave her an interview about this, correct? |
| Victim: | Yes, I did. |
| . . . | |
| Counsel: | . . . Okay.  Do you recall telling her that Ken Darity came over to the apartment at 10:30 p.m.? |
| Victim: | I don't remember. |
| Counsel: | You don't remember telling her that? |
| Victim: | (Shaking head in the negative). |
| Counsel: | Was Detective Schmidt taking notes when you were talking to her? |
| Victim: | Yes, she was. |

(Dkt. #6, Ex. 20, Vol. III, pp. 278-79).

The victim's trial testimony that the Petitioner arrived after 9 p.m., while lacking specificity, is not inconsistent with her prior statements.  Trial counsel cross-examined her on this point and the victim could not recall a specific time.  Consequently, a further attempt to impeach the victim about this particular fact would have been futile.

Petitioner's argument about the time the assault ended likewise lacks merit. He argues in claim 3 that the victim stated in her sex crime interview that there was a clock in the bedroom that read 11:59 p.m. when the assault ended. In her deposition, the victim testified that she did not remember seeing the clock in the bedroom while Petitioner was in her apartment. At trial, the victim testified that she did not recall telling Detective Schmidt during the sex crime interview that the clock read 11:50 p.m. when the assault ended.[7]

The victim's trial testimony on this issue was not inconsistent with her deposition testimony. Through cross-examination, trial counsel elicited that the victim provided a specific time to Detective Schmidt but failed to remember this fact at trial. The jury knew of the inconsistency between the victim's statement to Detective Schmidt and her trial testimony and of her inability to provide a specific time when asked at trial.

Petitioner fails to show that further impeachment with the victim's other statements about the time Petitioner arrived at her apartment or when the assault ended would have

---

[7] The victim testified at trial on cross-examination:

Counsel:           Okay. Do you recall telling Detective Schmidt during the same interview that when you related that Ken Darity was having sexual intercourse with you that when he stopped you looked up at the clock and it said 11:50 p.m.?

State:               Objection. Improper form of impeachment, sir.

Counsel:           I'm just asking her if she recalled it.

Victim:              I don't remember. It's been so long ago and I've tried to forget about this.

(Dkt. #6, Ex. 20, Vol. III, p. 79).

resulted in his acquittal. *See Strickland v. Washington*, 466 U.S. at 694. Absent a showing of prejudice, a claim of ineffective assistance of counsel cannot succeed because the requirements of *Strickland* remain unsatisfied. Claims 1 and 3 of ground four warrant no federal habeas relief.

Claim 2

Petitioner contends that trial counsel rendered ineffective assistance by failing to impeach the victim with her prior statements about how witness Janette Saurbier knew to bring food to the victim on the evening of the assault. Petitioner alleges that the victim testified at trial that she called Saurbier to discuss Saurbier bringing food to the victim after Saurbier left work on the night of the assault. Petitioner claims that Saurbier stated in her outcry interview that the victim contacted her about bringing food over[8] but in her deposition Saurbier failed to mention being called by the victim to bring over food.

Petitioner fails to explain the significance of this testimony. How Saurbier knew to bring food to the victim was of no consequence to any element of the offense for which Petitioner stands convicted. Moreover, Petitioner fails to show prejudice resulting from counsel's failure to utilize Saurbier's prior statements to impeach the victim's trial testimony about Saurbier's bringing food to the victim's home. *See Strickland v. Washington*, 466 U.S. at 694. This claim lacks merit and warrants no federal habeas relief.

_____

[8] The interview report shows that Saurbier stated that the victim had contacted her at approximately 3 p.m. on the day of the offense to ask Saurbier to bring food to the victim's apartment after Saurbier left work that evening (Dkt. #1, Ex. A, p. 7).

<u>Claim 4</u>

Petitioner contends that trial counsel rendered ineffective assistance by failing to impeach the victim with her prior statements about whether she told Saurbier to bring Saurbier's boyfriend to the victim's apartment. Petitioner claims that in her sex crime interview, the victim told Saurbier to get the boyfriend.[9] However, in her deposition, the victim stated she did not ask Saurbier to get the boyfriend.[10] At trial, the victim testified that Saurbier left the victim's apartment and came back with the boyfriend.[11]

The victim did not testify at trial that she did or did not ask Saurbier to leave and return with her (Saurbier's) boyfriend. Consequently, trial counsel had no basis to impeach the victim on this issue. This claim warrants no federal habeas relief.

---

[9] The sex crime interview report states that the victim "advised [that] she told Janet [sic] to go get Janet's [sic] boyfriend Damon." (Dkt. #1, Ex. A, p. 6).

[10] In her deposition, the victim testified that she did not ask Saurbier to come back with her boyfriend. (Dkt. #1, Ex. B, p. 15).

[11] The victim testified on direct examination:

State:      How does your - - how does this face to face with Ms. Saurbier end?

Victim:     She wanted me to go with her. I don't know why. I just couldn't leave my house. Everybody had left. It's not much and I was confused.

State:      Did she leave?

Victim:     She left and she came back with [her boyfriend].

(Dkt. #6, Ex. 20, Vol. III, p. 265).

<u>Claim 5</u>

Petitioner contends that trial counsel rendered ineffective assistance by failing to impeach the victim with her prior statements about when she told Saurbier and Saurbier's boyfriend about the assault. Petitioner argues that in her sex crime interview, the victim stated that she told her friends about the assault in the car on their way to Saurbier's house.[12] On direct examination, the victim testified that she told Saurbier what happened when they arrived at Saurbier's house.[13] On cross-examination, the victim testified that she told Saurbier and her boyfriend what happened while the three were driving to Saurbier's house.[14]

The record refutes Petitioner's claim. Trial counsel's question on cross-examination elicited from the victim a response inconsistent with her testimony on direct examination. Counsel effectively impeached the victim and exposed her inconsistent statement to the jury.

---

[12] The sex crime interview report states that the victim told Saurbier and Saurbier's boyfriend "what had occurred on the way over to their residence." (Dkt. #1, Ex. A, pp. 6-7).

[13] The victim testified on direct examination:

| | |
|---|---|
| State: | Did you speak to [Saurbier] and tell her what it is that happened? |
| Victim: | When we got back to her house. |

(Dkt. #6, Ex. 20, Vol. III, p. 267).

[14] The victim testified on cross-examination:

| | |
|---|---|
| Counsel: | . . . And then you went down with [Saurbier's boyfriend], got in the car and then you and [the boyfriend and Saurbier] or you told the two of them driving back what had transpired? |
| Victim: | Yes. |

(Dkt. #6, Ex. 20, Vol. III, p. 282).

Consequently, Petitioner fails to satisfy either of *Strickland's* deficient performance or prejudice requirements. This claim warrants no relief.

Claim 6

Petitioner contends that trial counsel rendered ineffective assistance by failing to impeach the victim with her prior statements about what happened once the Petitioner took her into the bedroom. Petitioner argues that the police report shows that the victim did not fight Petitioner "and just layed [sic] on the bed while [Petitioner] had intercourse." (Dkt. #1, Ex. A, p. 2). The sex crime interview states:

> Due to his threats and the violence that had already occurred on both the couch and the kitchen floor, [the victim] advised she was extremely frightened and in fear for her life. Once in the bedroom, she automatically laid down on the bed. She stated she knew what was going to happen and did not want to get hurt any further.

(Dkt. #1, Ex. A, p. 5). In her deposition, the victim testified that Petitioner "dragged me into the bedroom and threw me on the bed." (Dkt. #1, Ex. B, p. 14). Petitioner appears to argue that the victim gave inconsistent statements about whether she voluntarily complied with his demands in the bedroom and that counsel should have exposed these statements at trial.

At trial, the victim testified on direct examination that she involuntarily laid on the bed while Petitioner had sex with her.[15] Her testimony was consistent with her prior statements

---

[15] The victim testified:

State:          What happens [in the bedroom]?

Victim:         I laid on the bed and he had sex with me. I was screaming no. I was crying. I didn't want to.

(continued...)

that she offered no further resistance given Petitioner's violence toward her throughout the assault. Whether she simply laid on the bed or Petitioner forced her onto the bed does little to diminish her repeated and consistent statements that she feared for her safety and offered no further resistance because of Petitioner's threats and physical violence. Even if counsel had highlighted these particular statements for the jury, Petitioner fails to establish that such effort would have resulted in his acquittal. Because Petitioner fails to show prejudice, this claim of ineffective assistance fails. *See Strickland v. Washington*, 466 U.S. at 694.

Claim 7

Petitioner contends that trial counsel rendered ineffective assistance by failing to impeach the victim with her prior statements about whether she had seen her boyfriend, David Huff, on the day of the offense. Petitioner points to the victim's testimony on direct examination to support his claim:

> State: Okay. Let me direct your attention to Friday, April 18th, 1997 [the day of the offense]. In fact, let me back it up one day. Did David get arrested?
>
> Victim: Yes, he did.
>
> . . .
>
> State: What did you see happen that day, ma'am, reference to his arrest?
>
> Victim: All right. The police had come to my house looking for David. He wasn't there at the time.

[15](...continued)
(Dkt. #6, Ex. 20, Vol. III, p. 259).

> In fact, I hadn't seen him all day. Then he came in. I guess the police were still next door. I saw the cars outside. David came in and I went outside. I saw the police get him and put him in the car.

> . . .

> State: What was your personal reaction understanding that David had been arrested for . . . burglary?

> Victim: I was very upset.

> Counsel: Objection to relevance, Judge.

> Court: What was her reaction to his arrest?

> State: Yes.

> Court: All right. You may answer.

> Victim: I was very upset. I had been fighting with him that day. It wasn't a really good thing. He had been out selling my furniture and just bout everything else we owned. I was very angry. The last time I had talked to him we had an argument and I was very upset.

(Dkt. #6, Ex. 20, Vol. III, pp. 240-41). Petitioner appears to argue that the victim's statements that she had not seen Huff that day and that they had been fighting that same day are inconsistent with each other and that counsel rendered ineffective assistance by failing to question the victim at trial about this alleged inconsistency.

Petitioner's claim lacks merit. Counsel clarified on cross-examination that the argument occurred on April 17, 1997, the day of Huff's arrest.[16] Petitioner fails to show that the victim's statements are inconsistent. The victim did not assert that she and Huff argued in person. Thus, her statement that she had not seen Huff that day is not inconsistent with her testimony that the argument occurred that same day. Moreover, Petitioner fails to explain or demonstrate how this alleged inconsistency had any bearing upon the outcome of his trial. He neither articulates what further action he believes that counsel should have taken while cross-examining the victim, nor does he demonstrate or even contend that the jury would have acquitted him absent counsel's alleged error. *See Strickland v. Washington*, 466 U.S. at 694. This claim warrants no relief.

Claim 8

Petitioner contends that trial counsel rendered ineffective assistance by failing to impeach the victim with her prior statements about where Saurbier was when the victim came out of her apartment. Petitioner argues that the victim testified on direct examination that when she answered the door, Saurbier was halfway down the stairs. (Dkt. #6, Ex. 20, Vol. III, p. 264). In contrast, the police report states that Saurbier told police that the victim did

---

[16] The victim testified on cross-examination:

Counsel:     Okay. Now, on this particular day - - let me back up to the 17th when David got arrested for burglarizing your neighbor's apartment. You all had a pretty bad argument about that, correct?

Victim:      Yes, we did.

(Dkt. #6, Ex. 20, Vol. III, p. 277).

not answer the door when she went to drop off food at the victim's apartment, but that the victim came outside as Saurbier drove off. (Dkt. #6, Ex. A, p. 1).

Petitioner fails to recognize that the statement in the police report that he attributes to the victim was actually Saurbier's statement about where she was when the victim came out of the apartment. Petitioner cites no legal authority to support his apparent contention that counsel could have impeached the victim with a prior inconsistent statement made by someone other than herself. He points to no statement by the victim that was inconsistent with her trial testimony to support this claim for relief. Petitioner's failure to demonstrate deficient performance or resulting prejudice precludes relief on this claim of ineffective assistance. *See Strickland v. Washington*, 466 U.S. at 694.

Claim 9

Petitioner contends that trial counsel rendered ineffective assistance by failing to impeach the victim with her inconsistent statements about how Petitioner reacted when the victim bit his penis while performing oral sex on Petitioner. He points to the victim's testimony on direct examination that he did not have a significant reaction when the victim bit him.[17] On cross-examination, the victim testified that Petitioner slapped her after she tried

---

[17] The victim testified on direct examination:

State:        What was his reaction, ma'am, when you bit him?

Victim:       There wasn't much of one. He told me to please him.

(Dkt. #6, Ex. 20, Vol. III, p. 258).

to bite him.[18]  Petitioner claims that counsel should have impeached the victim with this

inconsistent statement.[19]

---

[18]  The victim testified on cross-examination:

Counsel:       Okay.  And you indicated, I think, that while you were in
               the living room that he wanted you to have oral sex with
               him and that you did so but then you bit his penis?

Victim:        Yes.

Counsel:       Okay.  And, I mean, you tried to bite it?

Victim:        Yes.

Counsel:       Correct?

Victim:        Yes.

Counsel:       So, you got some grab on it with your teeth?  That's what
               a bite is, correct?

Victim:        Yes.

Counsel:       And you say he slapped you because of that?

Victim:        Yes.

(Dkt. #6, Ex. 20, Vol. III, pp. 284-85).

[19]  In closing argument, counsel challenged the victim's contention that Petitioner slapped her based upon a medical report and photographs of the victim after the assault:

What was her basic testimony of what happened to her?  I mean, forget the sexual part for the moment.  I'll get to that.  It was that he slapped her, hit her in the face first when he wanted oral sex, but it didn't take place.  Remember that, boom, and it put her in fear.

Well, number one, what do you notice about the frontal face area here?  This is by the nurse practitioner now.  She didn't remember [the victim] independently.  It was just from her report.  What do you notice about that?  What I notice is not one single mark or entry about her face or head.

(Dkt. #6, Ex. 20, Vol. V, p. 559).

Again Petitioner fails to demonstrate that if counsel had further challenged the victim about Petitioner's reaction to the bite, the jury would have acquitted him. *See Strickland v. Washington*, 466 U.S. at 694. This claim warrants no relief.

It is therefore ORDERED AND ADJUDGED that:

1. Ground Four of Petitioner's petition for the writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is to enter judgment for Respondents and close this case.

**DONE** and **ORDERED** in Tampa, Florida on July 9, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

F:\Docs\2003\03-cv-1829.deny 2254.wpd